# United States Bankruptcy Court
## District of Delaware
824 N. Market Street
Wilmington, DE 19801

JUDGE BRENDAN LINEHAN SHANNON

824 MARKET STREET
WILMINGTON, DE 19801
(302) 252-2915

March 18, 2011

William F. Jaworski, Jr., Esquire
Law Office of William F. Jaworski
1274 S. Governors Avenue
Dover, DE 19904

Kristi J. Doughty, Esquire
Whittington & Aulgur
651 North Broad Street, Suite 206
P.O. Box 1040
Middletown, DE 19709-1040

Re:   In re: Carol Gretz, Case No. 09-10069 (BLS)
      Gretz v. Inner Spirits, Inc., Adv. Pro. No. 09-52848 (BLS)

Dear Counsel:

This letter embodies the Court's ruling on three matters tried before the Court in February 2011.[1]  Specifically, the Court addresses (i) the Motion to Dismiss due to bad faith; (ii) the Motion to Strip-Off the second lien; and (iii) the request by Carol Gretz (the "Debtor") for confirmation of her Second Amended Plan.  For the reasons stated below, the Court will deny the Motion to Dismiss, grant the Motion to Strip-Off and direct that the Second Amended Plan be placed on the Chapter 13 Trustee's confirmation calendar at the next available date.

Because the Court writes primarily for the parties, I will dispense with a lengthy background.  In short, in the summer of 2007, the Debtor borrowed approximately $30,000 (the "Loan") from Inner Spirits, Inc. ("Inner Spirits") for the purpose of renovating her home (the "Property"), which had been damaged in a fire.  The principal of Inner Spirits is Joseph Tutoro, who at all relevant times was engaged to be married to the Debtor's daughter.  The record in these proceedings reflects that substantial work was performed on the Property by Chris Dombrowski (an acquaintance of Mr. Tutoro), by a number of other contractors or service providers, and by Mr. Tutoro himself.  It is also clear that the project was not fully completed and that the Debtor was not, and to date has not been, able to obtain a Certificate of Occupancy from New Castle County.[2]

The Debtor failed to make payments on account of the Loan when due, and Inner Spirits obtained a default judgment in the Superior Court of Delaware in 2008.  This is significant in

---

[1]  The Court notes that judicial mediation was attempted in January 2011, but was unsuccessful. The Court nevertheless expresses its appreciation to the parties and to counsel for their efforts to attempt to reach a consensual resolution of this dispute.

[2]  The Property is a multi-residence building, and it was the Debtor's intention to renovate the Property in order to live there and to rent out portions of the Property to paying tenants.

**U.S. Bankruptcy Court for the District of Delaware**
March 18, 2011
Page 2

several respects. First, the default judgment allocated liability to the Debtor and of course liquidated Inner Spirits' claim. Second, it operates to preclude the parties and this Court from relitigating or revisiting the quality of the work performed on the Property. A substantial portion of the testimony adduced at trial focused on who performed or directed the work done on the Property, and whether it was done in a workmanlike manner. This Court does not sit as an appellate court with respect to the default judgment issued by the Superior Court, and thus the Court cannot and does not review the evidence with an eye toward evaluating whether Inner Spirits or Mr. Tutoro provided value commensurate with the Loan amount.[3] The default judgment was entered and has become final, and the money is owed.

A.    **The Motion to Dismiss**

Inner Spirits has moved to dismiss the Debtor's case as a bad-faith filing. In support thereof, Inner Spirits has offered evidence and testimony of conduct by the Debtor that is frankly troubling, to say the least. Specifically, the Debtor initially failed to disclose approximately $17,600 in net proceeds from a personal injury lawsuit received weeks before she filed her Chapter 13 case. It also appears that the Debtor's schedules contained a number of significant errors or omissions. Further, the undisputed record reflects that the Debtor purchased real estate in Virginia post-petition without prior Court approval. Inner Spirits also challenges the accuracy of the Debtor's reported expenses and income. Finally, it is alleged that the Debtor filed her Chapter 13 case solely to frustrate Inner Spirits' legitimate collection efforts.

The Debtor counters that she has been in financial distress for the better part of a decade, and that her bankruptcy case was commenced in an effort to address and resolve her substantial debts. The Debtor testified to extensive periods of unemployment due to injury, and to foreclosures on other properties she had owned due to payment defaults. The Debtor also testified to substantial prepetition credit card debts. Finally, as to the irregularities in her schedules and post-petition conduct, the record reflects that the Debtor's bankruptcy case was originally filed on a pro se basis, that able counsel only came on board later in the process, and the Debtor testified that any irregularities or deficiencies were the result of ignorance or oversight and have since been cured.

The parties are in agreement that the standard for bad-faith dismissal is governed by the Third Circuit's holding in In re Myers, 491 F.3d 120, 125 (3d Cir. 2007); see also Gier v. Farmers State Bank of Lucas, Kan. (In re Gier), 986 F.2d 1326, 1328 (10th Cir. 1993) (listing numerous factors courts consider in assessing good faith). Whether a debtor has filed a bankruptcy petition in bad faith is a fact-sensitive assessment left to the discretion of the bankruptcy court, which makes this determination on a case-by-case basis in light of the totality of the circumstances. In re Myers, 491 F.3d at 125. The factors that have been deemed relevant to this analysis include

> the nature of the debt . . . ; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has

---

[3]    Counsel correctly noted at trial that the testimony regarding the services performed was offered in connection with the Motion to Dismiss, and the Court construes it in that context.

**U.S. Bankruptcy Court for the District of Delaware**
March 18, 2011
Page 3

      been forthcoming with the bankruptcy court and the creditors.

Id. (quoting In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996).

      Subsequent to its ruling in In re Myers, the Third Circuit took the opportunity to further clarify how bankruptcy courts should apply their discretion in the context of the good-faith determination. The court stated that "a bankruptcy's court discretion in making a good-faith determination is not without limitations." Perlin v. Hitachi Capital Am. Corp. (In re Perlin), 497 F.3d 364, 373 (3d Cir. 2007). The court emphasized that "a finding of lack of good faith should not [be] lightly infer[red]" and that "dismissal should be confined carefully and utilized only in egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." Id. (citations omitted) (internal quotation marks omitted). The Third Circuit also noted that "bankruptcy and district courts have reserved bad-faith dismissal for the truly egregious case, often involving individuals with substantial means who have flaunted their wealth, have continued their lavish lifestyles, and are engaging in creative, elaborate schemes to conceal their assets and cheat their creditors or to otherwise inflict harm on third parties." Id. (quoting Tamecki v. Frank (In re Tamecki), 229 F.3d 205, 209 (3d Cir. 2000) (Rendell, J., dissenting)). However, the court has expressed caution about otherwise restricting the bankruptcy court's discretion. Id.

      Applying these factors, the Court concludes that the Debtor's petition has been filed in good faith. As a threshold matter, the bitterness underlying the dispute between the Debtor and Inner Spirits is alone insufficient to determine whether there exists a legitimate purpose for the Debtor's bankruptcy proceeding. See In re Quinn, 423 B.R. 454, 462 (Bankr. D. Del. 2009) ("[I]n determining whether a bankruptcy filing should be dismissed for bad faith, a court's inquiry must be directed to the debtors' behavior toward all creditors and to the debtors' overarching motives in filing for bankruptcy.") (emphasis in original) (citation omitted). The record reflects that the Debtor was beset by financial difficulties and pressures that had been pending (or building up) for years before she filed for bankruptcy. The fact that the sheriff's sale brought on by Inner Spirits' default judgment served as the catalyst for the commencement of her bankruptcy case does not mean that the case was filed in bad faith. Additionally, while the Court remains troubled by the significant irregularities in the Debtor's filings catalogued above, the record reflects that such irregularities have been largely cured or at least explained.[4] At bottom, the Court finds that the standard for good faith is a relatively lenient one,[5] Perlin, 497 F.3d at 373, and the record developed in this case demonstrates that the Debtor has carried her burden in this regard. The Motion to Dismiss will be denied.

---

[4] The Court also notes that the Chapter 13 Trustee has neither moved for dismissal of this case, nor joined in Inner Spirits' Motion to Dismiss.

[5] This construction of the standard is consistent with the remedial purposes that Congress intended the Bankruptcy Code to serve. Many (if not most) cases will involve debtors who have promised to pay but nonetheless defaulted, and innocent creditors who have relied upon a debtor's word and have been deeply harmed by the debtor's failure to pay a legitimate debt when due. Absent additional facts, these circumstances will not operate to place a debtor beyond the succor of the bankruptcy laws.

**U.S. Bankruptcy Court for the District of Delaware**
March 18, 2011
Page 4


**B.**     The Motion to Strip-Off

      By the Motion to Strip-Off, the Debtor seeks to have the Court enter an order holding that the second lien on the Property held by Inner Spirits (on account of the default judgment it obtained) is wholly unsecured. The parties have submitted competing valuations of the Property to establish that Inner Spirits' judicial lien is, or is not, "in the money."

      A Chapter 13 debtor is precluded from modifying, in the context of a Chapter 13 plan, the rights of a secured creditor whose claim is secured only by the debtor's principal residence. 11 U.S.C. § 1322(b)(2); Nobelman v. Am. Sav. Bank, 508 U.S. 324, 332 (1993). If any part of a creditor's claim is secured, then the entire claim – both the secured and unsecured portions – cannot be modified. McDonald v. Master Fin., Inc. (In re McDonald), 205 F.3d 606, 612 (3d Cir. 2000). Put more directly, if any portion is secured, the whole claim must be treated as secured. Id. This rule is colloquially known as the "one dollar rule." Id. at 613-14 ("[T]he creditor with only a dollar's value of security in the property . . . can invoke the antimodification clause [under § 1322(b)(2)].").

      In the present case, there is no dispute that the Property is the Debtor's principal residence. The parties agree that Inner Spirits' lien extends only to the Property and not to any other assets of the Debtor. Thus, the question before the Court is whether the value of the Property exceeds the amount of the first lien on the Property held by Countrywide sufficient to secure the claim of Inner Spirits. In support of their respective positions, the parties have submitted three valuations by real estate appraisers (two from Inner Spirits and one from the Debtor), and each of these has been admitted into evidence.

      Before turning to the appraisers' respective reports, the Court must address a threshold issue regarding Countrywide's secured claim. The amount of this secured first lien claim will serve as the "hurdle" that Inner Spirits must overcome in order to demonstrate that its secured claim is in the money.

      Countrywide filed a proof of claim with respect to its secured claim on March 4, 2009 in the amount of $136,222.59. Testimony adduced at trial reflects that in January 2009–before the filing of Countrywide's proof of claim–the Debtor entered into an unsecured "Homesaver Advance" loan from Countrywide in the amount of $14,202.28. Inner Spirits contends that the proceeds of this loan were applied to prepetition fees, costs, and arrears, such that Countrywide's proof of claim should be reduced from $136,222.59 to $122,020.31. However, the testimony and argument at trial conflicted as to whether the Homesaver Advance actually does operate to reduce Countrywide's secured claim. Irrespective of the proffered evidence, it is clear from the Court's docket that there have been no amendments or objections to Countrywide's secured claim in the amount of $136,222.59. Accordingly, pursuant to 11 U.S.C. § 502(a), the Court will treat as allowed Countrywide's claim in the original amount of $136,222.59 because this properly filed proof of claim has not been objected to by the Debtor. 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed . . . , is deemed allowed . . . ."); see also S. Comm. on the Judiciary, S. Rep. No. 95-989, at 62 (1978) ("A proof of claim or interest is prima facie evidence of the claim or interest."). Based upon the record developed in these proceedings, the Court concludes that the appropriate value of the Countrywide secured claim for purposes of this analysis is as reflected on its properly filed proof of claim, viz., $136,222.59.

U.S. Bankruptcy Court for the District of Delaware
March 18, 2011
Page 5

      The Court now turns to the parties' submitted appraiser valuation reports with respect to the Property. Inner Spirits' first appraisal, dated May 7, 2010, places the value of the Property at $260,000, while its second appraisal lists a value of $135,000. The Debtor's appraisal report lists a value of $124,000.

      As to the first valuation at $260,000, the Court cannot accord this appraisal substantial weight. Whilst acknowledging the context in which the valuation is offered – as a hypothetical, fully-renovated property producing income through multiple rental units – the Court concludes that this valuation is simply too far removed from the facts on the ground for the Court to be able to confidently rely upon it. The appraisal directly states that it is not predicated at all upon the actual condition of the Property, and while there may be a real prospect of rental income following substantial renovation, the record reflects that there has been no rental income for years and that the necessary renovations remain to be completed.

      That leaves the two remaining appraisals at $135,000 and $124,000. As noted above, the Court must treat as allowed the secured claim of Countrywide in the amount of $136,222.59. Therefore, neither proffered valuation would provide any remaining equity in the Property (not otherwise encumbered by Countrywide's first lien) to secure Inner Spirits' second lien. As a matter of law, and consistent with applicable Third Circuit case law, Inner Spirits' second lien is wholly unsecured and therefore may be stripped off. An order so providing shall issue.

**C.**    **<u>Confirmation of the Second Amended Plan.</u>**

      In light of the Court's rulings described above, it appears that the best course is for the Debtor's Second Amended Plan to be placed on the Chapter 13 Trustee's confirmation calendar at the next available date. The Trustee may then evaluate the Second Amended Plan in the context of the Court's orders denying the Motion to Dismiss and granting the Motion to -Strip-Off. In the event that objections or issues remain, the matter may of course be carried over to the Court's calendar for consideration of confirmation of the Second Amended Plan.

                                      Very truly yours,

                                      Brendan Linehan Shannon
                                      United States Bankruptcy Judge

BLS/jmw
Enclosure
cc:    Michael B. Joseph, Jr., Esquire